**No. 24-3576**

Decided on August 15, 2025 by Circuit Judges Carlos T. Bea, Ana de Alba, and District Judge Jeffrey V. Brown

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**RICHARD GIBSON and ROBERTO MANZO, individually and on behalf of all others similarly situated,**

*Plaintiffs-Appellants*,

v.

**CENDYN GROUP, LLC, THE RAINMAKER GROUP UNLIMITED, INC., CAESARS ENTERTAINMENT INC., TREASURE ISLAND, LLC, WYNN RESORTS HOLDINGS, LLC, BLACKSTONE, INC., BLACKSTONE REAL ESTATE PARTNERS VII L.P., JC HOSPITALITY, LLC,**

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Nevada, Case No. 2:23-cv-00140-MMD-DJA (Hon. Miranda M. Du, District Judge)

## DEFENDANTS-APPELLEES' RESPONSE TO
## PETITION FOR REHEARING *EN BANC*

Boris Bershteyn
Ken Schwartz
Michael Menitove
Sam Auld
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000

*Counsel for Defendant-Appellee*
*Caesars Entertainment, Inc.*

November 6, 2025

Melissa Arbus Sherry
Anna M. Rathbun
Christopher J. Brown
Graham Haviland
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

Sadik Huseny
Brendan McShane
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Defendant-Appellee*
*Cendyn Group, LLC*

(*Additional counsel on inside cover*)

Matthew L. McGinnis
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

*Counsel for Defendants-Appellees*
*Blackstone Inc. and Blackstone Real*
*Estate Partners VII L.P.*

Arman Oruc
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036-1612
(202) 346-4000

Alicia Rubio-Spring
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02110
(617) 570-1000

*Counsel for Defendant-Appellee*
*The Rainmaker Group Unlimited, Inc.*

Nicholas J. Santoro
SPENCER FANE, LLP
300 South 4th Street, Suite 1600
Las Vegas, NV 89101
(702) 408-3400

*Counsel for Defendant-Appellee*
*The Rainmaker Group Unlimited, Inc.*

Mark Holscher
Tammy Tsoumas
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

*Counsel for Defendant-Appellee*
*Wynn Resorts Holdings, LLC*

Patrick J. Reilly
Arthur A. Zorio
Emily Garnett
Eric D. Walther
BROWNSTEIN HYATT
    FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
(702) 382-2101

*Counsel for Defendant-Appellee*
*Treasure Island, LLC*

Kasey J. Curtis
Charles P. Hyun
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
(213) 457-8089

*Counsel for Defendant-Appellee*
*JC Hospitality, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................2

ARGUMENT ...................................................................................7

    A.    The Panel's Correct Application Of Precedent Raises No Conflict Warranting Further Review ....................................8

    B.    The Panel's Unchallenged And Independent Ground For Decision Is Further Reason To Deny Rehearing ...............15

    C.    This Case Is A Particularly Unsuitable Vehicle To Address Any Antitrust Concerns About Algorithmic Pricing ..................16

CONCLUSION ..............................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*49er Chevrolet, Inc. v. General Motors Corp.*,
803 F.2d 1463 (9th Cir. 1986) ...............................................................8, 9, 11, 14

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ...............................................................6, 8

*Buffalo Broadcasting Co. v. ASCAP*,
744 F.2d 917 (2d Cir. 1984) .............................................................12

*Dai v. SAS Institute Inc.*,
2025 WL 2078835 (N.D. Cal. July 18, 2025) ...........................................16, 17

*Duffy v. Yardi Systems, Inc.*,
758 F. Supp. 3d 1283 (W.D. Wash. 2024) ................................................17, 18

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ..........................................................13, 14

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) .............................................................7

*Los Angeles Memorial Coliseum Commission v. NFL*,
726 F.2d 1381 (9th Cir. 1984) .............................................................14

*Mularkey v. Holsum Bakery, Inc.*,
146 F.3d 1064 (9th Cir. 1998) ...........................................................8, 11

*In re Musical Instruments & Equipment Antitrust Litigation*,
798 F.3d 1186 (9th Cir. 2015) .............................................................9

*National Society of Professional Engineers v. United States*,
435 U.S. 679 (1978)........................................................................9

*Newman v. Universal Pictures*,
813 F.2d 1519 (9th Cir. 1987) .........................................................9, 11

*Paladin Associates, Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ...........................................................13

ii

**Page(s)**

*Plymouth Dealers' Association of Northern California v. United States*,
279 F.2d 128 (9th Cir. 1960) ..................................................................5

*In re RealPage, Inc., Rental Software Antitrust Litigation (No. II)*,
709 F. Supp. 3d 478 (M.D. Tenn. 2023) ...............................................17

*SmileDirectClub, LLC v. Tippins*,
31 F.4th 1110 (9th Cir. 2022) ...............................................................8

*St. Luke's Hospital v. ProMedica Health System, Inc.*,
8 F.4th 479 (6th Cir. 2021) .................................................................12

*United States v. Garcia*,
115 F.4th 1002 (9th Cir. 2024) .............................................................7

*United States v. Topco Associates, Inc.*,
405 U.S. 596 (1972).............................................................................9

*Weston v. Lockheed Missiles & Space Co.*,
881 F.2d 814 (9th Cir. 1989) ...............................................................15

*William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) ....................................................6, 15, 16

## STATUTES

15 U.S.C. § 1 ................................................................................8, 12

## OTHER AUTHORITIES

Phillip E. Areeda & Herbert R. Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (2025 update, online)..............................................................................9, 14

iii

# INTRODUCTION

The panel's unanimous decision applying well-settled law to case-specific factual allegations does not warrant rehearing. Plaintiffs sued Cendyn Group, LLC (Cendyn), a vendor of revenue management software, and several Las Vegas Strip hotels (Hotel Defendants) that licensed Cendyn's software, contending they paid supracompetitive room rates. In the district court, plaintiffs asserted two claims under Section 1 of the Sherman Act: First, that Hotel Defendants entered into a hub-and-spoke conspiracy by agreeing to adopt Cendyn's software and abide by the algorithmic pricing recommendations; and second, that the individual licensing agreements between each Hotel Defendant and Cendyn were, in the aggregate, unlawful. Plaintiffs pursued the same two claims in their opening brief in this Court—but expressly abandoned the hub-and-spoke claim in reply. The panel then unanimously and correctly concluded that plaintiffs' remaining claim failed for two independent reasons: (1) there are no allegations the licensing agreements restrain trade in the relevant market, which dooms plaintiffs' antitrust claim at the outset; and (2) plaintiffs do not allege how any individual licensing agreement causes an actual adverse effect on competition.

Rehearing en banc is not warranted. Plaintiffs seek this Court's review of only the first independent ground for decision. But the panel got that right. It applied settled precedent holding that, as a threshold matter, an agreement must restrain trade

in a relevant market to trigger scrutiny under Section 1. As the panel held, the agreements here flunked that basic test. The software licenses do not require the hotels to do anything—they do not reduce any Hotel Defendant's incentive to compete and do not restrain, in any way, Hotel Defendants' pricing decisions.

En banc review is also unwarranted because plaintiffs do not challenge the second independent ground for decision. So even if further analysis were appropriate, the panel engaged in that analysis and held plaintiffs still failed to state an antitrust claim. That means resolution of the first issue would not help plaintiffs.

This case is also a particularly unsuitable vehicle to consider any broader issues raised by algorithmic pricing. Plaintiffs explicitly abandoned their hub-and-spoke conspiracy claim. And they do not allege Cendyn's software pooled Hotel Defendants' proprietary information or the delegation of pricing authority. Plaintiffs' choices and allegations make this case fundamentally different than pricing algorithm claims in other courts involving different software. If the en banc Court were inclined to address algorithmic pricing recommendations under the antitrust laws, it should wait for a case free of the factual gaps and procedural gamesmanship that pervade this one. The Court should deny.

## BACKGROUND

Defendant Cendyn, which acquired certain software assets of The Rainmaker Group Unlimited, Inc., licenses revenue management software to thousands of hotels

around the world.  5-ER-789; Panel Opinion (Op.) 7 n.2.  Cendyn's software works with hotels to optimize their own data and forecast demand and expected revenue, which can facilitate more informed revenue management decisions.  5-ER-706, 5-ER-715, 5-ER-761–62.  This case concerns three revenue management software products licensed by Cendyn.  Op. 7-8.

In 2023, plaintiffs—a putative class who traveled to the Las Vegas Strip— sued Cendyn and the Las Vegas Strip hotels that licensed Cendyn's products. 6-ER-1152.  Plaintiffs alleged they paid supracompetitive prices for hotel rooms on the Strip due to an unlawful agreement among Hotel Defendants to inflate prices via their "collective adoption" of Cendyn's revenue management software.  5-ER-685. Plaintiffs initially advanced only one claim under Section 1 of the Sherman Act:  that the Hotel Defendants entered an illegal hub-and-spoke conspiracy by collectively licensing Cendyn's software and delegating their pricing authority to Cendyn.  Op. 6-7, 10; 6-ER-1177-78.  After the district court dismissed their complaint, plaintiffs added a second claim:  that the individual licensing agreements between the Hotel Defendants and Cendyn violated Section 1 because the agreements, "[i]n the aggregate," produced "anticompetitive effects in the form of artificially inflated prices."  Op. 7; *see* 5-ER-897.

The district court again dismissed plaintiffs' complaint.  Op. 10; 1-ER-2–3. As to the hub-and-spoke conspiracy claim, the court held that plaintiffs failed to

allege sufficient facts from which it could infer an agreement among Hotel Defendants to license Cendyn's software and implement its pricing recommendations. 1-ER-3; *see* 1-ER-6. As for plaintiffs' claim premised on Hotel Defendants' individual licensing agreements with Cendyn, the court found it implausible because the licensing agreements did not restrain the hotels' pricing discretion "in any way." 1-ER-18.

Plaintiffs appealed. In their opening brief, they challenged the district court's dismissal of both their hub-and-spoke conspiracy and licensing agreement claims. Opening Br. (OB) 36-67. But in reply, plaintiffs decided to "abandon their appeal of the court's dismissal of the separate hub-and-spoke claim Plaintiffs br[ought] in Count I." Reply Br. (Reply) 1 n.1.

The panel affirmed in a unanimous opinion. It noted that plaintiffs had "abandoned" the "separate hub-and-spoke claim." Op. 10. That left one question: "[W]hether Plaintiffs sufficiently state[d] a Section 1 claim when they allege[d] that the competing hotels *independently* purchased licenses for the same software, which software is alleged to have provided pricing recommendations, and which software did not share any licensing hotel's confidential information among the competing licensees." Op. 5. For two independent reasons, the panel held that plaintiffs did not plausibly allege a Section 1 claim.

*First*, the licensing agreements did not restrain Hotel Defendants' ability to unilaterally set prices or diminish competitive incentives in the market for hotel-room rentals on the Strip. Plaintiffs identified no "causal link between the contested agreement and an anticompetitive restraint of trade in the relevant market." Op. 6. The licensing agreements "did not require" Hotel Defendants to adopt Cendyn's recommendations and therefore did not "restrain any Hotel Defendant's ability to sell hotel rooms 'in accordance with their own judgment.'" Op. 21, 23 (quoting *Plymouth Dealers' Ass'n of N. Cal. v. United States*, 279 F.2d 128, 132 (9th Cir. 1960)). Nor did Cendyn share any hotel's confidential information with any other hotel. Op. 9, 19 n.8. Absent an agreement *among* the hotels—the claim plaintiffs abandoned—each hotel's decision to use the same revenue management software "d[id] not take away any hotel's incentive to compete on quality or price." Op. 20. Because there was no restraint in the relevant market, the panel held that "no analysis under the rule of reason is required." Op. 29.

Plaintiffs had argued (as they do here) "that the mere identification of a contract … when paired with the allegation that prices rose after the adoption of the contract, is sufficient to allege a Section 1 violation." Op. 5. But that rule, the panel concluded, overlooks the requirement that a plaintiff allege how the agreement restrains trade in the relevant market. Op. 25-26. As the panel explained, "a hotel would have to defend its business practices in the market for hotel-room rentals

under the rule of reason were it to, say, enter a contract with a painter for the painting of the hotel's dining room … even when the contract[] … do[es] not harm competition or prevent a hotel from competing in the market for hotel-room rentals." Op. 25; *see* Op. 29.  That rule defies the "the logic of Section 1 and [this Court's] precedents," including the instruction that "plaintiffs must allege a restraint of trade in the relevant market that causes an 'actual adverse effect on competition.'"  Op. 29 (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012)).

*Second*, the panel held that plaintiffs' claim independently failed because it relied on the effects of the individual licensing agreements "'in the aggregate,'" even though plaintiffs had abandoned their broader conspiracy claim and "antitrust law provides no mechanism by which courts can evaluate the independent agreements." Op. 27.  Applying this Court's decision in *Atlantic Richfield*, the panel held that aggregating individual licensing agreements to determine "whether together they acted as an unreasonable restraint of trade" was improper, because plaintiffs had not plausibly alleged that "each agreement had a discrete effect on competition," which would be required to aggregate their effects in the absence of a broader hub-and-spoke conspiracy.  Op. 27 (citing *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 665 (9th Cir. 2009) (per curiam)).

# ARGUMENT

This Court does "not take cases en banc merely because of disagreement with a panel's decision, or rather a piece of a decision." *Hart v. Massanari*, 266 F.3d 1155, 1172 n.29 (9th Cir. 2001) (citation omitted). En banc review is reserved for recurring "questions of general importance," resolution of "intracircuit conflicts," or issues "of transcendent public significance." *Id.* (citation omitted). "[D]isagreements with the three-judge panel decision," absent "exceptional circumstance[s]," are "irrelevant." *United States v. Garcia*, 115 F.4th 1002, 1003-04 (9th Cir. 2024) (Sanchez, J., concurring in the denial of rehearing en banc).

En banc review is unwarranted here. There is no intracircuit (or intercircuit) conflict—the unanimous panel applied settled Circuit precedent requiring a restraint of trade in a relevant market to warrant Section 1 scrutiny. The only issue on which plaintiffs seek review is not dispositive; there is an independent ground for decision that stands unchallenged. And the panel's case-specific rulings do not raise any issue of exceptional importance. Even crediting plaintiffs' contention that algorithmic pricing recommendations can raise significant Sherman Act questions, this case is far from representative: Plaintiffs expressly abandoned their hub-and-spoke claim and plead neither that Cendyn's software commingles or shares confidential data among competitors nor the delegation of pricing authority. The rehearing petition should be denied.

**A.      The Panel's Correct Application Of Precedent Raises No Conflict Warranting Further Review**

Section 1 condemns only those agreements that unreasonably restrain trade in the relevant market.  The panel applied that straightforward rule to correctly affirm dismissal of the remaining Section 1 claim.  Plaintiffs fail to show how the panel broke new ground and offer no reason to revisit the panel's well-reasoned decision.

1.      Section 1 of the Sherman Act deems unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce."  15 U.S.C. § 1.  This Circuit has articulated the Section 1 elements as follows:  A plaintiff must show (i) the existence of a contract that is "intended to restrain or harm trade"; (ii) the contract "actually injures competition"; and (iii) the "anticompetitive conduct" harmed the plaintiff.  *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1118 (9th Cir. 2022) (citation omitted); *see Brantley*, 675 F.3d at 1198 (requiring plaintiffs "plead injury to competition" by "identify[ing] a contract, combination or conspiracy that has an anticompetitive effect").

As the text of Section 1 makes plain, determining whether a contract "restrain[s] … trade" in a relevant market is a threshold requirement.  *See Mularkey v. Holsum Bakery, Inc.*, 146 F.3d 1064, 1065 (9th Cir. 1998) (citation omitted).  That is because "[t]he antitrust laws are not offended by agreements as such, but only by those with an anticompetitive content."  *49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1467 (9th Cir. 1986).  If an agreement does not "restrain

8

competition" in the relevant market, "there can be no resulting antitrust violation." *Newman v. Universal Pictures*, 813 F.2d 1519, 1522 (9th Cir. 1987). This Court, for example, has explained that "[o]rdinary sales contracts do not unlawfully restrain trade; indeed, trade would be impossible without them." *49er Chevrolet*, 803 F.2d at 1467; *see* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 1437a & 1437b (2025 update, online) (Areeda).

Only once an agreement is found to restrain trade in a relevant market is it evaluated for reasonableness—*i.e.*, whether it causes substantial anticompetitive effects in that relevant market. *See United States v. Topco*, 405 U.S. 596, 606-07 (1972). The reasonableness of a restraint on trade is ordinarily "analyzed under the rule of reason, whereby courts examine 'the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed,' to determine the effect on competition in the relevant product market." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191-92 (9th Cir. 2015) (quoting *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).

2.    The panel faithfully applied these principles to affirm dismissal of plaintiffs' claim. As it explained, the challenged agreements were individual "licensing agreements" between the various Hotel Defendants and Cendyn. Op. 14-15. Like any contract, the agreements do, of course, "restrain *some* trade"

insofar as the "Hotel Defendant [had] the obligation to pay money to Cendyn," and Cendyn could not "refus[e] to provide to that Hotel Defendant use of the software identified in the agreement." Op. 15. But that is not enough. The individual licensing agreements between Cendyn and the Hotel Defendants were simply "ordinary sales contract[s]" that did not restraint trade in the relevant market. Op. 17 (citation omitted). The panel did not decide "whether it is *always* true that ordinary sales contracts do not restrain trade" because "the agreements here, *as alleged*, do not restrain trade *in the relevant market*." *Id.* (first two emphases added).

That conclusion was correct. Plaintiffs failed to allege the licensing agreements "affect[ed] the competitive incentives in the market for hotel-room rentals on the Las Vegas Strip" because they neither revealed any confidential information among the various Hotel Defendants nor required Hotel Defendants to follow Cendyn's pricing suggestions. Op. 18-21. As the panel explained, "the agreement for the provision of and payment for software products does not restrain any Hotel Defendant's ability to sell hotel rooms 'in accordance with their own judgment.'" Op. 23. Plaintiffs were silent as to how any aspect of those contracts could meet Section 1's threshold requirement that the agreements "restrain[ed] … trade in the relevant market." Op. 26. That fundamental failure sunk plaintiffs' claim from the start because "Section 1 requires a causal link

between the contested agreement and an anticompetitive restraint of trade in the relevant market." Op. 6.

The panel decision tracks this Circuit's settled approach under Section 1. In *Mularkey*, this Court considered allegations that a bakery "violated § 1 by negotiating with 7-Eleven convenience stores a chain-wide price list, which would govern unless an individual distributor reached a different agreement with an outlet in his or her territory." 146 F.3d at 1065. As this Court explained, the allegation that the bakery "*negotiated* a price with one of its *retailers*, the 7-Eleven stores … does not constitute a vertical price agreement; it merely involves a contractual relationship between a manufacturer and one of its customers regarding the price of the manufacturer's product." *Id.* The agreement in *Mularkey* did not even "implicate § 1," therefore, "because there is no restraint of trade resulting from the agreement." *Id.*; *see 49er Chevrolet*, 803 F.2d at 1467 ("contractual agreements between GM and … carriers for shipping vehicles to … dealers" did not implicate Section 1 because "[o]rdinary sales contracts do not unlawfully restrain trade"); *Newman*, 813 F.2d at 1522 (finding no antitrust violation because the "contracts" at issue did not "affect[] appellants' ability to negotiate with other studios").

So too here. The software licenses permit the Hotel Defendants to use their own data to better understand their customers, forecast demand, and generate pricing recommendations. But nothing in those licenses obligates any Cendyn client to use

the software or accept its recommendations. There is no restraint on any Hotel Defendant's ability to make its own business decisions. And plaintiffs admit that each Hotel Defendant was free to override any price suggested by Cendyn's software—such overrides were, indeed, "never-ending." 5-ER-687. The only "restraint" that does exist—that hotels must pay for the software and Cendyn must provide it—falls outside the alleged relevant market of hotel room rentals.

3.     Plaintiffs claim the panel "crafted a novel rule that only a subset of restraints … merit rule of reason scrutiny," and there now exists "a new category of restraints to which the rule of reason does not apply." Pet. 10-11. Not at all.

There is nothing novel—in this Circuit or elsewhere—about first asking whether an agreement "restrain[s] … trade" in a relevant market, 15 U.S.C. § 1, before asking whether it produces substantial anticompetitive effects in that market. This Circuit has long engaged in that threshold inquiry, including in *Mularkey*, *49er Chevrolet*, and *Newman*. *See supra* at 11. Other Circuits do the same, recognizing that a licensing agreement "is not even amenable to scrutiny under section 1 unless it is a restraint of trade." *Buffalo Broad. Co. v. ASCAP*, 744 F.2d 917, 933 (2d Cir. 1984); *see also id.* at 934 (Winter, J., concurring) (reasoning a "non-exclusive blanket license cannot restrain competition"); *see St. Luke's Hosp. v. ProMedica Health Sys., Inc.*, 8 F.4th 479, 492 (6th Cir. 2021) (noting separately from a "rule-of-reason analysis" that a contractual provision "does not restrain trade").

12

Defendants cited these cases before the panel, Answering Br. 56, 58-60, but the rehearing petition ignores them entirely.

Plaintiffs cite this Court's decisions in *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003), and *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946 (9th Cir. 2023), to argue that once they allege the "existence of an express contractual agreement," the rule-of-reason inquiry is mandatory. Pet. 9. But neither *Paladin* nor *Epic* hold (nor even suggest) that a plaintiff need not first allege an agreement that restraints trade in a relevant market. *Paladin* involved a five-year agreement that barred customers from purchasing competing products—an obvious restraint in the relevant market. 328 F.3d at 1153. *Epic* likewise involved contractual restrictions imposed on developers that restrained trade in the relevant market. 67 F.4th at 968. That is what is missing here. *Supra* at 10-11. Plaintiffs' novel rule requiring a full-fledged analysis of alleged anticompetitive effects based on the "mere identification of a contract … paired with the allegation that prices rose" would dramatically expand the scope of the antitrust laws. Op. 5.

Plaintiffs' further suggestion that the Areeda treatise is the panel's "only authority" is unavailing. Pet. 12. It is *not* the only authority (for reasons stated above). Nor is reliance on Areeda misplaced. Plaintiffs themselves cited Areeda in their panel briefing, referring to it as "the leading antitrust treatise." Reply 30. This Circuit routinely turns to Areeda to articulate antitrust principles, including in

decisions plaintiffs cite. *E.g.*, *Epic Games*, 67 F.4th at 974 n.6, 975 & n.7, 976, 983, 994-95, 998 (citing Areeda 9 different times). And the panel tracked precedent in turning to Areeda for this very point—this Circuit expressly adopted Areeda's approach in *49er Chevrolet*, explaining that ordinary sales contracts "do not unlawfully restrain trade; indeed, trade would be impossible without them." 803 F.2d at 1467. As Areeda explains, a contrary rule would "eliminat[e] the agreement requirement altogether." Areeda ¶ 1437b.

To that point, the panel's approach makes good sense. A full rule-of-reason analysis "requires the factfinder to decide whether under all the circumstances of the case the agreement imposes an unreasonable restraint on competition." *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1387 (9th Cir. 1984). As the panel reasoned, under plaintiffs' "logic" that "every contract warrants scrutiny under the rule of reason, … a hotel would have to defend its business practices in the market for hotel-room rentals under the rule of reason were it to, say, enter a contract with a painter for the painting of the hotel's dining room." Op. 25. Plaintiffs do not disclaim that absurd result; they double-down on it. *See* Pet. 13. The flawed theory that courts must *always* undertake a rule-of-reason analysis whenever a plaintiff pleads the mere existence of a contract cannot be squared with this Court's longstanding approach, the approach of other Circuits, plaintiffs' own assertion that antitrust precedents "eschew[] rigid rules," Pet. 12, or common sense. Plaintiffs'

failure to plead the existence of any agreement that restrains trade in the relevant market raises no issue meriting further review.

**B.    The Panel's Unchallenged And Independent Ground For Decision Is Further Reason To Deny Rehearing**

The panel affirmed the district court's dismissal for two independent reasons. Because plaintiffs do not challenge the second ground, en banc review would afford plaintiffs no relief.  That is reason alone to deny.  *Cf. Weston v. Lockheed Missiles & Space Co.*, 881 F.2d 814, 814-15 (9th Cir. 1989) (declining to reach merits because appellant "failed to appeal an independent and adequate ground").

Even *if* the individual licensing agreements between Cendyn and the various Hotel Defendants could be considered restraints of trade, the panel separately concluded that plaintiffs failed to plausibly plead a Section 1 violation "because antitrust law provides no mechanism by which courts can evaluate the independent agreements between Cendyn and each Hotel Defendant 'in the aggregate.'" Op. 27. "Plaintiffs … fail[ed] to plead facts" showing that any particular agreement "has a discrete effect on competition."  Op. 28.  And as this Court has explained, agreements that do not individually have a discrete effect on competition cannot be "aggregated" to deem a restraint unreasonable.  Op. 27 (quoting *Atl. Richfield*, 588 F.3d at 665).  So even apart from plaintiffs' failure to plead that the agreements are restraints on trade, the panel found plaintiffs' allegations insufficient to show the agreements were unreasonable under the claim's second element.

15

Plaintiffs do not address this independent ground for dismissal, let alone contest it. *Cf.* Pet. 14-15 (conceding anticompetitive effects theory relies on "common use of a single algorithmic pricing agent," *i.e.*, the aggregated effects of agreements that do not independently affect competition). And the requirement that a plaintiff plead discrete effects on competition is designed to prevent precisely what plaintiffs attempted here: to evade the necessary showing for a hub-and-spoke conspiracy. *See Atl. Richfield Co.*, 588 F.3d at 665; Op. 26-27. Given the panel's alternative ground for affirming dismissal, there is no reason for this Court to revisit an issue that would not alter the panel's bottom-line judgment.

### C. This Case Is A Particularly Unsuitable Vehicle To Address Any Antitrust Concerns About Algorithmic Pricing

Plaintiffs and their amicus emphasize the importance of the overarching issue of how algorithmic pricing intersects with antitrust law. American Antitrust Institute Amicus Br. 13-16. Even if that were true, it would be hard to think of a case less suited to address that issue than this one. The three concerns raised most often— horizontal coordination, the pooling of competitors' confidential data to suggest prices, and the delegation by competitors of pricing decisions to the same pricing algorithm—are nowhere to be found in plaintiffs' appeal or the panel decision. So *this* algorithmic pricing decision presents no issue of extraordinary importance.

*First*, most algorithmic pricing cases have involved allegations that algorithmic pricing facilitated horizontal collusion. *See, e.g., Dai v. SAS Institute*

16

*Inc.*, 2025 WL 2078835, at *5 (N.D. Cal. July 18, 2025) (only horizontal claim pleaded); *Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1295 (W.D. Wash. 2024) (describing alleged "horizontal agreements" as the "key to plaintiffs' antitrust claims"); *In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 709 F. Supp. 3d 478, 503 (M.D. Tenn. 2023) (no challenge to vertical software licenses and the "alleged horizontal agreement" was the "heart and soul" of the complaint).

But plaintiffs abandoned that claim on appeal. In their opening brief, plaintiffs spent 31 pages asserting a "plausibl[e] … conspiracy based on concerted action between the [Hotel] Defendants" because they "joint[ly] delegat[ed]" pricing decisions to Cendyn. OB36-67. Defendants responded at length, explaining that plaintiffs failed to plausibly allege any conspiracy. AB21-54. In reply, plaintiffs then expressly "abandon[ed] their appeal of the [district] court's dismissal of the separate hub-and-spoke claim Plaintiffs br[ought] in Count I." Reply 1 n.1. And the panel decision repeatedly recognized and relied on plaintiffs' decision not to pursue their hub-and-spoke claim on appeal. Op. 7, 14, 21 & n.9.

*Second*, some "courts … have found the exchange of confidential information to be a decisive factor in their analyses." *Dai*, 2025 WL 2078835, at *4; *see, e.g.*, *In re RealPage*, 709 F. Supp. 3d at 510 (identifying "most persuasive" allegations as the sharing of "proprietary commercial data," pooled with competitors' confidential information "to recommend ... prices"); *Duffy*, 758 F. Supp. 3d at 1292

(finding allegations sufficient where defendants pooled competitors' confidential information). But plaintiffs do not allege Cendyn's pricing recommendations were derived from pooled confidential data among the Hotel Defendants. Op. 9, 19 n.8. And the panel recognized that its "analysis might change if Plaintiffs had alleged that Cendyn shared the confidential information of each competing hotel among the licensees." Op. 19 n.8.

*Third*, some algorithmic pricing cases that have survived dismissal allege that competitors "delegat[ed] their pricing decisions" to the same algorithm. *Duffy*, 758 F. Supp. 3d at 1292. But as the panel recognized, "[t]his case does not present the question regarding whether an agreement in which a firm independently delegates *binding* pricing decisions to a third party is necessarily a restraint of trade," Op. 26 n.11, especially because plaintiffs allege Hotel Defendants could—and did— override Cendyn's pricing recommendations at-will, 5-ER-687.

An appeal devoid of the allegations and legal theories that have been the focal points of litigation elsewhere, and one intentionally and belatedly narrowed to pursue an isolated claim, hardly warrants extraordinary review by the en banc Court.

18

# CONCLUSION

The petition for rehearing en banc should be denied.

Dated: November 6, 2025

Respectfully submitted,

*s/ Melissa Arbus Sherry*

Boris Bershteyn
Ken Schwartz
Michael Menitove
Sam Auld
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000

*Counsel for Defendant-Appellee*
*Caesars Entertainment, Inc.*

Matthew L. McGinnis
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
(617) 951-7000

*Counsel for Defendants-Appellees*
*Blackstone Inc. and Blackstone Real*
*Estate Partners VII L.P.*

Melissa Arbus Sherry*
Anna M. Rathbun
Christopher J. Brown
Graham Haviland
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200

* Pursuant to Circuit Rule 25-5(f),
counsel attests that all other parties on
whose behalf this brief is submitted
concur in the filing's content.

Sadik Huseny
Brendan McShane
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Defendant-Appellee*
*Cendyn Group, LLC*

Mark Holscher
Tammy Tsoumas
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

*Counsel for Defendant-Appellee*
*Wynn Resorts Holdings, LLC*

19

Arman Oruc
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036-1612
(202) 346-4000

Alicia Rubio-Spring
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02110
(617) 570-1000

*Counsel for Defendant-Appellee*
*The Rainmaker Group Unlimited, Inc.*

Nicholas J. Santoro
SPENCER FANE, LLP
300 South 4th Street, Suite 1600
Las Vegas, NV 89101
(702) 408-3400

*Counsel for Defendant-Appellee*
*The Rainmaker Group Unlimited, Inc.*

Patrick J. Reilly
Arthur A. Zorio
Emily Garnett
Eric D. Walther
BROWNSTEIN HYATT
    FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106
(702) 382-2101

*Counsel for Defendant-Appellee*
*Treasure Island, LLC*

Kasey J. Curtis
Charles P. Hyun
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
(213) 457-8089

*Counsel for Defendant-Appellee*
*JC Hospitality, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**Form 11.  Certificate of Compliance for Petitions for Rehearing/Responses**

**9th Cir. Case Number(s)** <u>24-3576</u>

I am an attorney for Defendant-Appellee Cendyn Group, LLC.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel rehearing/petition for rehearing en banc/response to petition is *(select one)*:

[X]  Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words: 4,183.**
*(Petitions and responses must not exceed 4,200 words)*

**OR**

[ ]  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** <u>*s/ Melissa Arbus Sherry*</u>          **Date** <u>November 6, 2025</u>